May it please the Court, my name is Anna Venvenue and I represent Petitioner Jessica Garcia. What's the relief you're asking of us? Well, Your Honor, I believe that you should remand this case. For what purpose? Well, I think that the Board committed clear legal error in failing to evaluate, well, really the Immigration Judge committed clear legal error in failing to evaluate the credibility of the evidence on record prior to moving on to its application of the burden of proof in this case. Let me ask you a question about that. In this hearing, weren't the Petitioner and the mother entitled to be held credible since the AIJ did never make a credibility determination? I actually think there's a good argument that they should be held credible for two reasons. One, because the Immigration Judge didn't make an adverse credibility finding in this case, but also because the evidence in the record, not in his decision, but in the actual transcript at AR 231 and 232, the Immigration Judge said on two different occasions that he found the testimony of Ms. Garcia to be credible. Well, it seems to me that that's pretty important because at that point, we have credible evidence which contradicts birth certificates and contradicts unsworn affidavits, correct? That is correct, Your Honor. In addition to that, the Officer Chan's testimony contains a number of discrepancies and inconsistencies which tend to indicate that his evidence shouldn't have been given full weight. Well, what evidence is there is that she was born in Mexico? None, as far as I can tell. None that's reliable. There's the evidence that she was picked up in Mexico, so she was present in Mexico. Well, there is her statement that she was born in Mexico. Certainly. But that statement — That comes in as a — apparently came in as admission against interest, right? She told the officer in a — immigration officer in a non-adversarial setting that's where I was born. In criminal custody, Your Honor. Right. And there's a dispute as to whether she said that she was born there or she was from there and what she exactly meant when she said it. But if she hadn't thereafter testified suggesting that she did not — was not born in Mexico or she didn't know where she was born, we could rely on the I-2213 and find that that was enough, couldn't we? I don't think so, Your Honor, and here's why. The — under Murphy and the law of the circuit, the government has a burden of establishing by clear, convincing and unequivocal evidence that the aliens — the alienage of the person by the alien's testimony at the hearing or a sworn testimony and by an authentic birth certificate. However, Espinoza says, 45-3rd, generally an I-213 form is probative and admissible. Right. Unless — Unless there is other evidence which contradicts it. My question was, again, if she hadn't have given the testimony, which we have to hold to be true, there is no testimony contradicting it, and therefore, it would be clear and convincing. Well, there's the testimony of her aunt. Okay. Saying that she doesn't know where she was born. Well, so how is that — well, she doesn't know. Right. But that — that's an indirect contradiction to the fact that she was born somewhere. Well, but at that point, it's — we've got the petitioner saying she was born in Mexico at the — in the I-213, and we got nothing from her saying contrary. So you're saying just having the aunt say she doesn't know is contrary? No, I don't. I'm not saying that entirely. What I'm also saying is that the I-213 itself contains other indicia of unreliability. For example, when Officer Chan testified, there's a number of discrepancies in the I-213, just factual inaccuracies. And when he was asked to explain those inaccuracies, he gave extremely unsatisfying responses. For example — Well, isn't it — but the first time that there's ever any indication that she's not from Mexico is after she gets arrested. Right? I mean, she has a birth certificate that she's been using. She used it for all sorts of things, including getting food stamps. Always claimed, you know, in the I-213. And so the first indication that she's not from Mexico is after she's arrested. Well, Your Honor — And they want to send her back. That birth certificate is undisputedly false. That is the one undisputed fact in this record, that that birth certificate is fake. And that she only had to use that birth certificate because she simply had no other form of I.D. If her grandfather, grandmother, step-uncle had obtained a false birth certificate from Guatemala or from the United States, she would have been pretending to be from Guatemala or the United States her whole life. So the fact of the matter is there's no reliable piece of evidence in this record that suggests that she was born in Mexico other than perhaps her statement, which is later controverted by other reliable evidence in the record. It doesn't make sense that this Court would credit an unsworn statement in an unreliable I-213 over her sworn testimony that the immigration judge said he found believable. Okay. Let me ask you a question. If I don't believe you, if I believe the government has met their burden, the case is over, correct? Well, yes. Or do I need to remand? It's over if you believe that there was not legal error. The legal error in this case I think was pretty clear in that there was no expressed credibility finding. But isn't there a burden? Isn't there a standard of review here? The government convinces by clear and convincing evidence. Then your client gets to go forward and suggest why that is not true. Isn't that the way it goes? That is correct, Your Honor. So are you suggesting, again, are you asking for a remand, even if the government does establish by clear and convincing, can you still have a remand? Because you still, I mean, as I read it, the BIA didn't even concentrate on what your client could have given or could not have given as admissible evidence. Do I just remand for them to continue the hearing? I certainly think that's an option before you. That's why I asked the question when I started it, what is the relief you're asking for? You said you'd want us to reverse and remand, and I said remand for what? What is your answer to that last for what? Well, I think that there's – Not what you think. It's what do you want us to do? What relief are you asking us to do? I would like you to find that she testified credibly. It sounds like you want to win right straight out, which is, that's not going to happen. Right. And in the case that I'm not going to win right out, I think that this court – I think there was legal error in the case. Is there a way you can really win right out here? Only – I mean, if the court follows the standards of review and doesn't – I mean, we're not having a hearing here. Only if this court finds that you have to take Ms. Garcia's testimony – We don't make findings. We're not a trial court, and we're not an agency, so all we can do is find error and grant relief. Right. That's all we do. So only if this court finds that there was error in not giving full credit to Ms. Garcia's testimony. The problem is I don't think that there was ever a credibility finding in this case. And if we do – so what's the relief you're asking us to do? Reverse and remand for what? For an express credibility finding by the immigration judge. For a credibility determination of – Why do you want that? You've already got credibility on your side. I don't understand why you want that. Well – It seems to me, and I'm trying to lead you just a little bit, but it seems – To blow your life apart. It seems to me that what you want to determine is if she is admissible under 8 CFR 1240.8, since that's the ultimate question. The truth is, Your Honor, we don't get to that question unless the government's met its burden of proof. And I submit that the government hasn't met its burden of proof on this record. So either this Court has to remand for appropriate credibility findings on the record or the Court has to find that they had their chance, they put their case, it's over, and they have to reverse and vacate the removal order because they found that the government didn't meet its burden of proof by clear, convincing, and unequivocal evidence. So the big win would be vacating because the government didn't meet its burden of proof and they had their shot. But the problem, to get you there, is that there is some evidence, and the only question is whether that evidence is going to stand against no evidence. In other words, if I say I'm from Mexico and then later on say, oh, I don't remember, I was lying, et cetera, somebody has to make a determination about whether I was lying the first time or the second time, right? Agreed, and that didn't happen. But here there is testimony that has been introduced by the government that says, in which she said, and you say it's apparently in doubt, but there is some evidence that she said, I am from Chihuahua, Mexico, right? I believe Guadalajara. Guadalajara. Yes. So that's enough, right? I think that that's enough. Unless it's not clear and convincing. I don't think that it's enough for clear, convincing, and unequivocal evidence of her because it didn't come with an authentic birth certificate and it contradicts the evidence. And that's the only way to say it. You're saying that that's the exclusive way of proving it is by a birth certificate? Well, there needs to be some documentary evidence on the record of her alienage in Mexico. The government would need no evidence. Well, they did. But they did do the birth certificate. They did do the I-213. They did show that, you know, her – I mean, so they have her own statements that she says she was from Mexico and that she got certain benefits her whole life and that the first time she claims she's not from Mexico is after she gets arrested. But the birth certificate is undisputedly a fake birth certificate. So that can't possibly be clear, convincing, and unequivocal evidence of her birth in Mexico. Let me ask you a question. Why do you keep saying clear, convincing evidence? What case do you cite that that is the standard of review? Well, there's a long line of them, Your Honor. I'm going back to Woodbridge. The one in inadmissibility situations. Well, Your Honor, this – the – I don't want a deportation case. Ruiz-Vidal is one, Your Honor, in which it was in the removal context where this court has a fine. The removal is not an inadmissibility context. Well, there's no dispute that the government has to prove alienage by clear, convincing, unequivocal evidence. What do you mean there's no dispute? I thought there's one line in the government's brief that suggests it may not be so. There is, Your Honor. That – to the extent that the government makes that argument, I think that this court must reject it for two reasons. One, the board itself applied the clear, convincing, unequivocal evidence standard. So what? Well, the government never made the argument to the board that it should have a fine. That's a better – that's a better point of what the board did. Well – The board was relying on what with that? I mean, that didn't have any – but the good argument is the government never said anything about it before. They didn't. The government filed its motion for summary affirmance before the Board of Immigration Appeals, arguing that the immigration judge's adopt – findings should be adopted in full. And the immigration judge also applied the clear, convincing, and unequivocal standard. So I don't think that the standard is at issue here. If this Court believes that it is, it would have to be remanded with instructions to do that standard without unequivocal. But I think that the case law of this circuit is pretty clear that alienage always must be established by clear, convincing, unequivocal evidence, and that's because of the policy behind that. We don't want to be deporting people where it's not almost close to 100 percent certain that they're not from here. And there's evidence on this record that suggests she might be born – have born here. She might have been born in some other country, not Mexico. Well, clear and convincing is not 100 percent. No, but clear, convincing and unequivocal? I mean, because beyond a reasonable doubt isn't 100 percent. So clear and convincing is the next level. But anyway, you're over your time, so we'll hear from the government. Good morning. Good morning, Your Honors. Blair O'Connor on behalf of the Attorney General. Your Honors, as both the immigration judge and the board in this case found, the evidence of alienage in this case was established by, number one, Petitioner's statements to an ICE agent memorialized in the I-213 that she was born in Mexico. Her initial sworn testimony before the immigration judge that she told the ICE officer she was born in Mexico. Her representations to the state of California on the births of all three of her children that she was born in Mexico. Any of that sworn? What's that? Any of that sworn testimony? The only thing that was sworn was her initial sworn testimony before the immigration judge. As to what she told the guy. Yes. But so if I look at everything here, if she had a valid birth certificate, it would be We don't have that. The alien's own admission under oath would be enough. We don't have that. Unsworn admissions would be enough if they weren't uncontradicted. We don't have that. So what do we got? What we do have, Your Honor, is an alien with a lifetime of representations that she was born in Mexico, including her statements to the ICE agent, her sworn testimony initially before the IJ that she told the ICE agent she was born in Mexico. The only contradictory evidence is her 11th hour claim and the second sworn testimony before the immigration judge that she didn't know where she was born and that really she told the ICE agent she was from Mexico, not born in Mexico. All right. So at that point, it seems to me the government should have had the IJ say, you know, your truth, your veracity is subject to question, and therefore we don't believe anything you said. At that point, I don't have to suggest she's credible. And at that point, there is no evidence which is contradictory to her unsworn statements. But the IJ didn't say that. Correct, Your Honor. Nobody said that. Correct, Your Honor. So at that point, we have truth, a truthful, contradictory statement against everything you have here. And I haven't got any case to suggest you win. Well, Your Honor, the IJ did rely on this Court's decision in Tejeda Mata, which involved similar facts and that involved an alien in response to a question from an ICE agent where they were born. They said they were from Mexico. And this Court held that that was sufficient. That was an admission of alienage. However, the uncontradicted admission can be if the admission is unsworn, but in that case, no testimony was given by the alien. In other words, there was no contradictory testimony. The alien said nothing when it came to the hearing. Point well taken. But this alien has never, ever, under sworn or unsworn, asserted affirmatively that she was not born in Mexico. That's what distinguishes this case from Murphy. There you have an alien who swore he was a U.S. citizen because he was born in the U.S. territory. And he denied alienage up and down. She has never. But it seems to me, again, you're shifting the burden of proof. If the government's burden is to prove by clear and convincing evidence that someone has no alienage, there are ways in the cases to suggest that's fine. But I can't find one that hits this particular case. And so what you're suggesting is I should just jump and suggest that the clear and convincing proof is there based on an unsworn, based on a statement which is contradicted by true evidence. We would say that's not even contradicted. She doesn't – she never told the ICE agent that she was not, affirmatively not, born in Mexico. She said that she was, assuming she's credible, which is why we don't need to remand for a credibility hearing, because the board at IJ took her at her word. Even if she told that agent she was from Mexico, the logical inference for that agent was that that's Mexican alienage. We have a lifetime of those representations. Well, we have various – we have her being born in various places. We have her born in Guadalajara, Jalisco. I think Jalisco's a state, is it not? All right. Then you have her born in Chihuahua, which is also a state. That was where the birth certificate was obtained, which, again, everyone agrees that the great aunt's ex-husband went and got that. Well, then – but that's all countered by this letter from the Office of Vital Records from the country of Mexico. Actually, that was the state of Mexico, Your Honor, not the country. Mexico's also a state. It does say the state of Mexico, Mexico. Because Mexico is a state. All right. So it's only in one state? Exactly, Your Honor. Exactly. That's different from Guadalajara, which is a separate state, and it's different from Chihuahua, which is a separate state. And Jalisco. Jalisco's a city in Guadalajara, Your Honor. All right. Thank you very much. That helps me. We would also ask the court – That, of course, also demonstrates my ignorance of Mexico, but so be it. Yes, Your Honor. It's extant nonetheless. Was a credibility determination made as to the testimony of this person? It was not. The Immigration Judgment Board assumed – they took her at her word. Did she ever say she was born in Mexico? She told – yes, Your Honor. She told the ICE agent. She told the State of California. Oh, no. I'm saying – did she ever say she was born in the United States? No, Your Honor. Can she know that she was born in the United States? No, Your Honor. Her testimony says she does not know where she was born. Obviously, no one's a good witness to their own birth. I mean, we depend on what people tell us. But she's never said that she knows she was born in the United States. She doesn't know where she was born. She knows – the great aunt testified that when she went to get her at her young age, she assumed that she was born in Mexico because she went to the same town where the alien's three brothers were born because that's established by their birth certificates and that the great aunt, through her whole life, assumed that this alien was born in Mexico. And, again, she's represented that through her whole life. We would ask that the Court also, in considering this case, take a look at the statements made by the immigration judge in rendering this decision, not the oral decision, but on the transcript, because he pointed out that if we were to accept this alien's case, that on the facts of this record, that this does not meet the government's burden for establishing alienage, that creates an unworkable situation for the government. All any alien has to do is to come in, notwithstanding a lifetime of representations of foreign-born birth, come in to the immigration judge and swear, I don't know where I was born, and the government is powerless. They can't deport that alien regardless. Well, now, just a minute. That isn't true. Because all the government's got to get up and say is, hey, that's a bunch of nonsense. Look. She said this to the State of California. She said this to the agent. She said this to somebody else. There is incredibility here, Mr. I.J., and based on that incredibility, you can give no credibility to her statement. Well, her statement would be that she doesn't know where she's born. Well, but that's a statement. But, honestly, that is still incredible if she's represented to someplace else, that she's born in Mexico. That's the worry I have in this case. Yes, Your Honor. Nobody ever made a credibility determination which locks me in, that she's credible. And now we've had Gomez-Granillo-Beholder decided, correct? Yes, Your Honor. We'd say that's an opposite, though. All right. Tell us why. Because there, the credibility determination was critical and it would have affected the outcome of the proceedings. And there was no – basically, there the I.J. thought that he couldn't even consider the alien's testimony in making that removability determination. So the alien's testimony was never given full consideration. Here, her testimony was given full consideration. In fact, the adjudicators credited it. They said, I don't dispute that she told the ICE agent I was from Mexico, not born in Mexico. But even assuming that, given this Court's decisions in Tejeda-Mata, there's still sufficient evidence for the government to describe this burden of alienage. And it shifts to her to show, you know, that she was admitted. Let me ask you a question, the same one I ask counsel. Do we need to remand this to the BIA to determine whether Garcia was admissible under H.C.F.R. 1240.8? I'm not sure if I understand that question. I mean, whether or not – Even if you win. Don't we need to remand to the BIA to determine whether she was admissible under H.C.F.R. 1240.8? Because that's the admissible, admissibility standard. Sure, Your Honor. No, but she – assuming that she was an alien, I don't believe she ever contested that she entered the country illegally. Well, but just a minute. It seems to me that – now, this is only because we've got another case you're just going to talk about in a minute – that she has a great case to suggest that she might be imputed LPR status. Her parent, though, was murdered. Her – it doesn't matter anything about her parent. It has to do with her aunt, who is her guardian. I'm not sure that extending Clevis Gaspar to – to non-biological parents, this Court has ever done that, Your Honor. You're not sure? Or are you saying you never have? I'm pretty – I'm actually sure that all the cases involving imputation have involved biological parents. Well, I think you better look about that. Okay. Because that was something that – it seems to me that the only thing that the BIA did at all was suggest whether the government met their burden or not. Yes, Your Honor. At that point, the burden shifts back to the alien. At that point, the alien can put forth evidence. At that point, the alien can bring motions. And one of the motions may suggest she's admissible. Well, Your Honor, the IJA never denied her any of that. I mean, he found her to be an alien. He never denied her the opportunity. He didn't even make any determination as to what her evidence was worth. His only determination is the government met their burden. Sure, Your Honor. But in finding and approving the movability charge, he obviously found that she entered unlawfully and had no lawful admission. That's part of that charge. Is that what happened? Or did the ILJ essentially close the case at the point at which the determination was made? He closed it. He found her removable based on the fact that she never put on her case. She was never prevented an opportunity to do that, Your Honor. No way, shape, or form. Her attorney – that hasn't been exhausted even. She never challenged in her appeal to the board that I was never given an opportunity to do this. So that issue is not before the Court. My worry is not that she didn't challenge it, that she wasn't given the opportunity. The government made it on one sole issue, and that's what's on appeal. She says they didn't meet that burden, and we really don't know what the BIA or the IJ in this instance gave her the right to present her own evidence thereafter. Yes, Your Honor. But still, Congress has made clear that all issues must be exhausted in appeals to the board. And she thought she was denied an opportunity to show a lawful admission. That's an issue she must have raised in her appeal to the board in order for this Court to have jurisdiction to review that issue. Well, to review it, but we can remand to give them the opportunity since we don't know what happened with the BIA's decision to decide what to do. Of course the Court could do that. The government would ask that he not, again, because it's been both waived. And also they never presented that issue in any of their opening briefs to the Court as well. All right. Unless there are further questions, both of you have exceeded your time, and this matter will stand submitted. Thank you, Your Honor. Thank you.
judges: Lucero, Callahan, Smith